Oral argument as follows, 15 minutes for the plaintiff, 15 minutes to be shared by the defendant. Ms. Victor for the plaintiff appellant. Good morning, may it please the court, I'm Cindy Victor on behalf of Appellate Court. I would like to reserve five minutes for rebuttal. There are four issues that we raise in our appeal. Did the district court err when it dismissed its claims under 42 U.S.C. section 1981? Did it err when they ruled that intercity contracting lacked standing to assert constitutional claims? And whether it erred when it said that it did not state a viable equal protection claim? And was there an error that defendant Appellee Fleiss Van Den Brink was not a state actor for the purpose of the claims brought to under 42 U.S.C. section 1983? The first issue, I know that this court has read the briefs, I've been listening, you all have read everything, so I won't go through the statement of facts. With respect first to the 1981 claim, the court dismissed the claim saying that intercity contracting failed to state the race of its owners. In order to establish a claim, a plaintiff has to prove that he belongs to a class of people who are subject to discrimination based on their race. The defendant intended to discriminate them based on their race and defendant's discriminatory conduct abridged a right enumerated in section 1981A. In the complaint it does say that. It says that ICC was a 51% minority owned business. It listed the differences. It said that it was, talked about the differences, minority and majority. That the AAI was the company that was selected was a majority owned or white owned business. So it seemed that the standard here is to say, well, the plaintiff company was owned by a black man. There isn't any case law that says you have to say that the person is a black man or an Asian man or a woman or whatever it is. It says you have to say that it's a minority owned business, which is what the complaint said. The complaint even detailed that the company was owned 51% minority. The information that was provided to... I think you have enough in there to satisfy notice pleading requirements. Maybe you want to go to your other arguments. I would echo that. Thank you so much. To go to the next argument, the equal protection argument. I'm skipping a little bit around here. But on equal protection, the district court found that the inner city failed to state an equal protection claim because it didn't identify the racial makeup of inner city. And we would make the same arguments again. We listed... Right, thank you. And the only other thing I would add too is that the Supreme Court has recognized... Let me ask this. Your equal protection claim, that's based on 1983, is that right? Correct, 1983. So you have to show or at least plead Monell liability that there is some policy or custom. Correct. Okay, and is that in the complaint? Yes, it is. And that was not a decision that the district court made. It did not find that there was a lack of Monell, a lack of pleading that would satisfy Monell. So in this case... Maybe we see that as an issue. So where in the complaint did you plead facts that would show Monell liability against the township in the complaint? Because in this case, the township delegated, and this actually segues into the state actor issue as well. So thank you for your question, Judge Mathis. This segues into the township's procurement policy. So the township had a procurement policy that said that the township and only the township would make these decisions, as we detail at length in our brief. And the township then delegated, although the procurement manual does not provide that the township can delegate, nor is there an ordinance that allows the township to delegate either any type of an ordinance or an administrative ordinance or an administrative regulation that allows the township to delegate this responsibility to another entity. But it did so. And as it was the ultimate decision, I'm so sorry. Are you saying that F and V, if I'm remembering right, that they were de facto the decision-maker here? What I'm saying is that the Monell liability comes from the fact that the township is the decision-maker, that they have to be the decision-maker, and their rules and regulations make them be the decision-maker. Correct me if I'm wrong, but I thought your pleadings make out a scenario where F and V is making a recommendation and then the township itself makes the decision. That is correct, Your Honor. You have that right. What we're saying here is that this follows, as this Court ruled in the Paderak v. Village of Armada case, a cat's paw situation where the person who doesn't have decision-making power uses their influence or ability improperly to influence the decision-maker to make an improper decision. And that's what we're saying here. Would you agree that F and V is not a state actor and that F and V did not have final decision-making authority? I would agree that F and V did not have final decision-making authority, but I do believe that they meet the qualification for state actor in underlying the cases that we had submitted to the Court, because here you have the procurement policy says the duty to solicit, receive, and review the bids. Not make the decision. The decision to solicit, receive, and review the bids belongs only to the department director. So by delegating this to F and V, you have them delegating what would be a state function to what would normally be a private business. But here you have a situation which is similar to the West case that we cite in our brief, where the contracting to provide these functions, it doesn't have to be a final decision-making authority that they delegate in order to be a state actor. In the West case, the Supreme Court held that a private doctor who contracted with the state to provide part-time orthopedic care to inmates at a state prison was a state actor. But he was, I mean, and they're suing on his own actions. Correct. You know, in providing bad care. And here they make a recommendation like a consultant. But the recommendation was they knew that the importance under the procurement policy, the way that they made the recommendation, that they knew that the action would be taken the way it was. And you can tell by looking at the agenda, there was no public comment. There was no ability for anyone. And when you look at the township's agenda, it is here's the recommendation, they vote yes or no. There wasn't any. They have to vote. And their own, you know, rules say that they retain all this discretion. I mean, it's their decision. It's not the end of the world for you. I respect that, Your Honor. I mean, sometimes we're just trying to clean things up a little bit, you know. No, I do respect that, Your Honor. And I do understand. I mean, it seems like the crux of this case is whether you pled a claim that the township itself acted with racially discriminatory intent, right? Correct. At the end of the day, that's probably what this case is about. Correct. So why don't you tell us why you think you did that, why you pled that? Because, Your Honor, in this case. Plausibly. Yes. You have two. And this is where F&V comes into play through the recommendation. You have two businesses that present. One owned by Curtis Johnson, who is a black man and who on his resume listed that he was a graduate of Morehouse College, a traditional black college, and who was interviewed over a video conference. So they could see he was a black man. And so you have that. And you have a business that is owned by Asbestos Abatement Incorporated, which is owned by a white entity, is a white-owned entity. And you have the two businesses and they present. And InnerCity presents a bid that is almost a million dollars cheaper for this project. And so you have both of them being interviewed. And then the facts lay out in detail how the interview was even set up that they sent a notice saying it's a different matter, a different case. And then just a little bit before the actual interview, then Curtis gets an email that says, oh, we're just going to have a brief telephone call. Then he gets faulted for that in the conclusion, in the recommendation of F&V that he wasn't prepared. They didn't ask for the questions in advance where Asbestos Abatement did. That's sort of what you're talking about sort of goes to what F&V did. They did the interview, all those things. How does that apply as it relates to racial discrimination to the township? Because that's where the Manel factors play in. Because the township delegated the right to do that analysis to F&V and to make that. So they needed to vet that themselves. And you have a situation where as that very lengthy complaint goes through, there is a bazillion, and I know that's a technical term, bazillion things that were wrong with that recommendation. Things that were flat out improper and incorrect in the analysis of F&V's, excuse me, of ICC's bid. There wasn't an EGLE violation. They missed the violations for AAI. They did not, the differences in, there was 30 times more demolitions done by my client than by them. They never filed for the supposed jobs they had. They never filed all the forms. So all this is. I hate to interrupt you, but let me ask you this since we're running out of time here. If we determine that the township is not liable for the actions of F&V, what causes of action are you left with here? You still have the actions. So if you say the township is not liable for F&V's actions, then its action in delegating the work to them means either they have to be one of two things. They either have to be a consultant to the company, to the township, and the township takes responsibility for what it does and its consultants, or it's separate. And then under that policy, the mechanism set forth in their own procurement manual, then they need to be considered as a state actor. Because otherwise, their actions, which were tainted, were adopted by the township without more, without investigation, and in following the policy. So they adopted a discriminatory action and made it their own. Thank you. I'm sorry, I see my time is up. Thank you very much. And we'll hear from the other side. Good morning, Your Honors. Michelle Thomas on behalf of F&V. I'd like to pick up a little bit with the discussion of the cases dealing with the private actor defense to the state action requirement in order to proceed under Section 1983. And I think as opposed to the West case, the Estelle case, which plaintiffs also state is what's controlling here. And in that case, the court dismissed claims against a private entity, and it was a physician, because the gravamen of the allegations were that the physician misused his judgment and that the state had not totally outsourced their responsibility to, in that case, it was an inmate. I think it was an adult inmate. But in any case, that's what we have here. This is basically a professional malpractice claim, you know, brought underneath the terms of 1983. And that is not the point of 1983. You know, the civil rights laws are meant to protect entities and citizens from oppressive actions by the government and not by torts by private actors, which is what we have here. It's plain and simple. Moving on to 1981, I will concede that the plaintiffs are correct in that the Sixth Circuit has not issued any decisions regarding whether or not a 1981 claim can be brought in the context of this case, which is a disappointed bidder case. Again, that's the nub of this situation. One contractor submitted a bid, thought he should get it. He didn't get it. He's not happy about it. A little bit more, because they're saying racial discrimination. It's not just, I lost. It's just, I lost because I was discriminated against. Doesn't that change it from the standard disappointed bidder case? Well, again, we've got the case, the Batiste case, which is a Seventh Circuit decision, looking at it in the context of disappointed bidder in that very regard. And what that case said and what the district court here also said was, yes, you can proceed under intentional discrimination, but you have to do so in a sufficiently, a factually sufficient means. Conclusionary allegations of disparate treatment or intentional discrimination alone do not suffice. But if they plausibly allege racial discrimination, that would seem to be in the heartland of what 1981 is concerned about. I mean, I think this whole standing disappointed bidder thing is probably obsolescent doctrine. But if we're going to take it seriously, you know, somebody says I was discriminated against based on my race and I was denied a contract as a result. That's the heartland of that statute's zone of interest, isn't it? Well, it's part of it, because in this case, the plaintiff is an LLC. So we're not talking about an individual. We're talking about owner members. And they don't identify the racial identity of any of the owner members. Well, let's just say that we're totally unpersuaded by that whole line of decision. Okay. About nobody knew that the plaintiff organization was owned by, had a black owner. I mean, let's just assume we don't buy that. Okay. Okay? If we don't know what the racial identity of the LLC members are, how can we intentionally discriminate?  But let's say by the end of the Zoom call and so on, I'm just giving you a suggestion for your argument. I understand. Assume we disagree with that. What do you say then as to this, if you want to talk about disappointed bidder? You know, F&V knows that these folks are African-American, and they're denied a contract. And they were the lowest bidder. I mean, how in the world is that not justiciable? Under 1981 for crying out loud. It would be, again, if they had actually pled intentional discrimination and pled acts or statements that reflect intentional discrimination as opposed to race-neutral considerations. We're talking about the merits on 12b-6, not about standing. Well, except we're talking about what they pled in their complaint. Right. And nowhere in their complaint do they identify any intentional discrimination. All the factors they complain about. Well, I think they are alleging intentional discrimination. The issue you're raising may be more properly stated as whether they're alleging direct evidence or circumstantial evidence. Now, maybe some of the evidence, or perhaps most of it, is circumstantial. But if we reasonably review and interpret the complaint allegations, there's probably enough there to say they are alleging intentional discrimination. Well, Judge Clay, I think that the problem here is that they say it's intentional discrimination, but then the facts that they detail only reflect a disagreement. I'm not saying they're going to be able to prove that, but certainly that's been alleged. Well, I think they need to do more than just say, we disagree with your evaluation, which is all they're saying. Well, we're at the motion to dismiss stage. This is a very early stage here, and you're saying the whole case should be dismissed at this early pleading stage. Now, maybe some of their pleadings are inaudible and can be improved upon, and maybe perhaps the district judge, in his discretion, should have even permitted or invited an opportunity to amend the complaint. But just to dismiss at this early stage seems to be a bit drastic, don't you think? Well, the judge had allowed an amendment, first of all. When the first motion to dismiss was filed, they were permitted to amend the complaint, and that's what we're looking at now. And that amended complaint is still deficient, and they did not ask, again, whether by reconsideration or a Rule 54 motion, for an opportunity to amend. They didn't produce a proposed amended complaint. And even in their appeal brief, they do not detail what they would have alleged that would have perfected their claims here. So our position is that that's waived at this stage. Are there any other questions? Apparently not. Thank you very much.  We have another argument. Good morning, Your Honors. Kevin Campbell on behalf of the appellee, Norfolk Township. Your Honors, having watched two arguments already on this case, I will keep my remarks as pointed and brief as possible. Norfolk Township filed two motions to dismiss in this case for the reason that out of the hundreds of allegations, very few pertain to anything that Norfolk Township did or didn't do. The bulk of the allegations were aimed entirely at Fleiss and Vanderbrink, and what Fleiss and Vanderbrink allegedly did or didn't do. That's what precipitated two motions to dismiss, and the inner city contracting has had two opportunities to correct those deficiencies as it relates to the claims against the township. As I think Sister Counsel conceded, when asked pointedly, what facts did you plead that plausibly established intentional discrimination as it pertains to Norfolk Township? Immediately, Sister Counsel pivoted to F and B. There are none. There are absolutely zero allegations. I think their point was that the township, by delegating this authority to F and B, who then did the discriminatory action, that somehow imposes sort of monel liability. So how are they wrong about that? And I think respectfully that that is premised upon a misunderstanding of Norfolk Township's policy. The Norfolk Township complied with its procurement policy, which required it to issue the request for proposals to review the bids, excuse me, request for bids, not proposals, to review those bids once they came in openly. And then what the township did is simply retain a reputable engineering firm to do the vetting, to do the due diligence. And there's absolutely nothing that's pointed to by Sister Counsel to suggest that in any way that was a delegation of our responsibility. We just hired a consultant to do the due diligence in this case. As it relates to monel liability, and this is the way I understand this complaint as pled, is that it's based on inaction. As I understand, and bear with me just one moment because I actually have the allegations, paragraphs 124 through 127 of the first amended complaint, Inner City alleges that there's a failure to investigate by Norfolk Township of Michigan. Well, they've not, Inner City has failed to plausibly plead a monel liability on an inaction theory. As this court has set forth in Doe v. Claiborne, the plaintiff must establish a clear and persistent pattern of unconstitutional conduct. Notice, and just to reiterate, there was absolutely no notice here to the township. Nowhere in the 201 allegations is plaintiff alleged that Norfolk Township was placed on notice that anyone in F&V, let alone Trevor Wollett, had racial attitudes, had racial animus, and that that was impacting or played a part in the recommendations. And a quick side note, as alleged in plaintiff's complaint, the representatives of F&V, Fleiss and Vanderbrink, appeared at the meeting at which the board adopted the recommendation by Fleiss and Vanderbrink. Plaintiffs do not allege that at that meeting they said, hold on, these guys are racist, watch out, investigate. This is, they did not do that. It's not alleged in their complaint because they didn't do that. There's absolutely nothing to suggest that the township had notice of these allegations, and that respectfully is fatal. Would it be enough if the township had a custom of de facto outsourcing this decision? I mean, let's say the township had a custom of always getting a consultant, and it turned out it was a racially biased consultant. Is that enough for Monell liability? Two questions, is that enough just as a generic matter, and is there any such allegation in this complaint? One, my understanding of Dobie Claiborne is that we would have, in answer to the first question, is that Northville Township would have to have notice and intentionally disregard that notice of unconstitutional behavior. You'd have to have a pattern of this sort of thing? Yes, but I think equally important, if not more important, is that that's simply not alleged here. It is not alleged that Northville Township has such a pattern, and more specifically to these allegations, knew about the alleged racial attitudes that Mr. Wallot had as he was interviewing these candidates. I think that really goes to the heart of the matter. One other point on 1981, I respectfully submit that 1983 is the appropriate mechanism by which rights protected by 1981 are vindicated against the municipality. And so for that reason, although the court did not rely upon that argument, I respectfully request that that would be an appropriate basis to affirm. And why do you think that again? I rely, Your Honor, on Judge Clay's opinion in Arundel v. City of Memphis, wherein the court held that the express cause of action for damages created by 1983 constitutes the exclusive remedy, federal remedy rather, for violation of the rights guaranteed by 1981 by state governmental units. Okay. So unless there's any questions. Good, straightforward answer. Thank you, Your Honor. Thank you. Any rebuttal? No. Thank you, Your Honor. So even if you don't prevail on your Monell claim, arguably you might still have a claim against the consulting company pursuant to Section 1981 brought under 1983 if we reframe the issues a bit beyond the way they were initially framed in the district court. What do you think about that? I understand how the court can view that this way, and only to not ever to argue with the court because I've been in front of all of you and I respect each and every one of you. I think that with respect to Monell that there was enough alleged, just to think about this through. Monell can be based on a single action. This court has held that as has the Supreme Court. In this case, while paragraphs of this brought up, if it's based on a single action, you have to allege prior actions in other cases and situations where the township behaved in that discriminatory fashion, don't you? No, I don't think so. I think you can have it. So a situation would be, I'm going to just take a real extreme example. A situation would be if the township, take out F and V, the township made a decision, doesn't have a custom or practice of discriminating, but said we are not giving the contract to inner city because we don't want to give it to a minority contractor. That would be a single decision. They wouldn't have had to show more. That would be enough to state a claim for racial discrimination. So that's an extreme example, but one in which there's a single act can take. And then who's liable for that? The township. The township is liable for that action. So in other words, if F and V said that to the township, the township knew that that was? Correct. And so the question came up here about that there was no notice to the township and there was an opportunity for, there was no opportunity and the agenda lays. Opportunity for what? For inner city to come forward and say this is racially motivated at the meeting. So what happened was, and the agenda supports this and the record that we've attached supports this. Okay, but before we jump to that, I mean, what about the notice to the township? Correct. So there was no opportunity to provide that notice. But they did try because they asked the township to reconsider it and asked them to allow them to come forward and speak. So it isn't that we didn't give notice. The decision, and to make this as quick as I can, vote happens on day. There is no public comment unlike any other kind of vote. There's no public comment. It's presented that it should go to AAI. They vote. There's no discussion even by the board. Not even an opportunity for discussion. So then we send a letter saying we think this is improper and here's all the reasons and we want you to reconsider it and it doesn't happen. We go to the next meeting. Point of notice? Correct, yes. So we go to the next meeting hoping that they will reconsider and that they will allow us to talk and they did not. So there was an opportunity. The township had notice and that letter was distributed to everybody on the board. So it wasn't an opportunity where we just sat back and then came up with this because we were angry. This is not a disappointed, bitter situation. That long, detailed, factual narrative in the complaint about all of the differences between the two companies and how there were so many untrue things said about Inner City that were factually able to be determined to be untrue, that were clear by going to state records and things like that, that the only motivation could be, we believe, is racial and that there couldn't be anything else. And that was because the township adopted that as their action without any discussion, without any review. There was no review by the township in any way, form. It was consultant says this, we are adopting this as our action, no discussion, no opportunity input, nothing else. I believe that they've adopted that as their action. Which letter were you referring to? Is it this AAI letter or is it some other letter that put the township on notice, you were saying? I don't have it in front of me so I don't know. Who sent it? I sent the letter. Okay. And then my clients came to that meeting and they brought up during public comment that they felt Mr. Johnson said he felt it was because of who he was and no action was taken. That was at the second meeting where they wouldn't take an action. That answers my question. Okay. Is there any questions? I see my time is up and I know you've had a really long and busy day already and you've got more people there behind me. Thank you very much. Thank you so much. Thank you for your time this morning. Thank you. And the case is submitted.